NUNC PRO TUNC

JUL 30 2008

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

FILED

2008 AUG 11 PM 12:53

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| LADESLAO OCAMPO-FLORES | ) |
| Defendant. | ) |
| | ) |

Case No. SD CR 07-3112
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

cv

BY RM_____DEPUTY

07CR3438 DMS

### NOTICE OF MOTION TO VACATE SET ASIDE OR CORRECT SENTENCE
### PURSUANT TO 28 U.S.C. § 2255

**PLEASE TAKE NOTICE** that upon the enclosed motion and all other

proceedings had herein that defendant wii move this Honorable Court,

at a time and place to be determined, for an order granting this Motion

to Vacate Set Aside or Correct Sentence and for any further relief as

this Court deems just and proper.

Respectfully submitted,

*Ladeslao Ocampo Flores*

Ladeslao Ocampo-Flores

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **LADESLAO OCAMPO-FLORES** | ) | Case No. SD CR-07-3112 |
| **Petitioner,** | ) | (DRW) |
| | ) | **CV** |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| **Respondent** | ) | |
| | ) | |

## MOTION TO VACATE SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

**COMES NOW** the petitioner,pro se, in the above aforementioned and entitled cause and moves this Honorable COurt for an order gr- anting this Motion to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255 for the good reasons adduced herein or in the alt- ernative for an evidentiary hearing to determine same.

### FACTUAL BACKGROUND

Petitioner was initially arrested on or about the twenty fifth (25) of November,2007 and charged and indicted for a violation of 8 U.S.C. §1326(a)(b) reentry of a previously convicted felon. Upon a stipul- ated plea of guilty petitioner was then sentenced to a period of in- carceration of 24 months to be followed by a two year period of sup- ervised release. A timely notice of appeal was not filed. Save the instant offense,petitioner knows of no other proceedings in th is or any other venue.

I.   PETITIONER **OCAMPO** WAS SENTENCED BEYOND THE MAXIMUM PENALTY AS REFLECTED IN THE JURY'S VERDICT, OR OTHERWISE ADMITTED BY THE PETITIONER, BEING IN VIOLATION OF THE RULE ANNOUNCED IN APPRENDI, AND AS FURTHER DEFINED AND CLARIFIED BY BOOKER

The Supreme Court recognized a Federal defendant's right to be sentenced based only upon the prescribed penalty as reflected in the jury's verdict for the penalty, and not only on the face of the statute of conviction, but also as to the maximum penalty depicted in the Federal Sentencing Guidelines. See, <u>United States v. Booker</u>, 543 U.S. 220 (2005).

The <u>Booker</u> decision, authored by Justice Stevens, determined that in order to bring the Federal Sentencing Guidelines in conformity with a defendant's Sixth Amendment rights, that the jury must determine "each element" that is crucial in deciding the sentence to be imposed. At first blush, an untrained layman might surmise that the opinion is not decisive. However, a careful reading and analysis of the opinion evinces otherwise.

First, as this Court is aware, the <u>Booker</u> decision has two separate significant substantive holdings. In the primary holding, the Court determined that the Sixth Amendment guarantee's, as had been previously explained in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), do in fact apply to the Federal Guidelines. Indeed, the key wording in the opinion is the word "reaffirm" <u>Id</u>. The <u>Booker</u> decision (as the <u>Blakely</u> decision vis-a-vis State defendants) did not create, nor dictate any new legal precedents, nor establish any new Constitutional rules.

The <u>Booker</u> decision merely clarified, reaffirmed, and unequivocally extended it's holdings in <u>Apprendi</u> to apply to the Federal Guidelines. Justice Stevens' specific wording is very significant,

since he had previously decided in <u>Yates v. Aiken</u>, 484 U.S. 211 (1987) that, "when a decision of the United States Supreme Court has merely applied settled precedents to new and different situations, no real question arises as to whether the latter decision should apply retro-actively; in such cases, it is a foregone conclusion that the latter decision applies in earlier cased, because the later decision has not in fact altered the rule in any way." <u>Id</u>. at 217, and FN (3).

In any reading and analysis of these related decisions one must give careful consideration to the underlying fact that Justice Stevens wrote all three decisions for the Court; i.e., <u>Apprendi</u>, <u>Booker</u> and <u>Yates</u>. Therefore, it cannot be gainsaid that in essence, the <u>Booker</u> decision merely applied the SIxth Amendment holdings of <u>Apprendi</u> to the Federal Guidelines via it's <u>Booker</u> decision. Surely, <u>de minimus</u>, for all those Defendants whose convictions became final after <u>Apprendi</u> was decided, the retroactivity question of <u>Booker</u> to timely file any petitions under 28 U.S.C. §2255 is an issue that has been previously resolved. <u>Yates</u>, supra.

Note also, in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), being yet another opinion by Justice Stevens, holding that retroactivity is of no question, since <u>Strickland v. Washington</u>, 466 U.S. 668 (19-84) was already decided before the Defendant's conviction became final. Viewed through the lens of <u>Yates</u>, supra, Justice Stevens knew and made clear that it was the intention of the Court that the <u>Booker</u> decision would automatically require the lower Courts to apply the <u>Apprendi</u> decision to all Defendants whose convictions were not final when it was decided, including those collateral proceedings under 28 U.S.C. §2255.

The <u>Booker</u> opinion unequivocally and clearly states therein

that, "we reaffirm our holding in Apprendi." The word "reaffirm" as defined in Webster's 11 New Riverside University Dictionary states, "to affirm or assert again." In other words, "we [assert once again] our holdings in Apprendi." Thus, there was no new rule required to be announced in Booker, but only a reaffirmation and clarification of the existing rule which the Court had originally announced in Apprendi. Therefore, according to Yates, the Booker decision "merely applied settled precedents (Apprendi) to new and different situations," and "no real question arises as to whether the later decision [Booker] should apply retroactively." Yates, 484 U.S. at 211. (See also, Stringer v. Black, 504 U.S. 222, 227 (1992), "a case decided after a Petitioner's conviction and sentence became final may not be the predicate for Federal habeas corpus relief unless the decision was dictated by precedent existing when the judgment in question became final.")

The second Booker holding appears at first glance to be a more complicated application of these same legal principles. However, upon careful reflection Justice Breyer's holding is quite simple. After the majority's clarification of it's prior holding in Apprendi, the Court attempts to remedy the existing problem of bringing the Federal Sentencing Guidelines into compliance with the guarantees of the Sixth Amendment. It finds and confirms that the provision of the Federal Sentencing Guidelines that make the Guidelines mandatory, Title 18 U.S.C. §3553(b)(1), to indeed be unconstitutional. By excising that specific statutory provision and section, the Court attempted to bring into compliance it's holding previously established in Apprendi.

This resulting substantive change in existing law altered the

-3-

District Court's discretion by making the Guidelines merely advisory in nature when determining the correct Guideline range.  The significant question that nonetheless arises is:  How will this new interaction play into the correction of an improperly calculated Guideline range?  This question is irrelevant in the context of the matter now before this Court for several reasons.  First, Justice Breyer limited the remedial holding of the Court to "... all cases pending on Direct Review or not yet final." Booker, supra.

Next, and more importantly, the Ex Post Facto Clause of the U.S. Constitution clearly establishes that a violation occurs when a change in law "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." see, California Department of Corrections v. Morales, 514 U.S. 499, 504-505 (1995) (quoting, Collins v. Youngblood, 497 U.S. 37, 43 (1990)).  Simply stated, if the District Court in reliance upon it's newly granted discretion using the Guidelines as merely advisory during the re-sentencing, upon granting of the Petitioner's Title 28 U.S.C. §2255, refuses to sentence Petitioner under the Guideline range reflected in the Jury's verdict alone (thereby sentencing him to a much higher range), the Sentencing Court will violate the Constitution's Ex Post Facto Clause by increasing the punishment of the criminal act.

> **THE BOOKER DECISION DID NOT ESTABLISH ANY NEW RULE OF CRIMINAL PROCEDURE, BUT MERELY REAFFIRMED WHAT WAS ALREADY EXISTING PRECEDENT CLEARLY ESTABLISHED PRIOR TO DATE THE PETITIONER'S CONVICTION BECAME FINAL.  THEREFORE, IT MUST BE GIVEN ITS APPROPRIATE RETROACTIVE APPLICATION IN THIS CASE SUB JUDICE.**

**A.   Threshold Requirement:**

The first requirement under a reviewing Court's analysis when determining whether a judicial decision must be given full retroactive

effect, is to ascertain whether said decision announced a new rule.
If so, was this new rule dictated by previously existing precedent
established prior to the Defendant's conviction becoming final, or
was it merely the application of said existing well-established prin-
ciples. Thereafter, in the event the reviewing Court determines the
decision rendered a new rule which was not dictated by precedent, the
Court must then further determine whether the subject rule itself is
one that is procedural or substantive in nature. Under this thresh-
hold analysis, if the Supreme Court in <u>Booker</u> merely "applied settled
precedents to new and different factual situations, no real question
arises as to whether the later decision should be applied retro-
actively." <u>Yates</u>, supra.

Therefore, we must examine the <u>Booker</u> decision closely to see
if (as a matter of law) it announced a new rule, or is just the lat-
est in a series of related cases which all emanate from <u>Apprendi</u>.
There can be no reasonable disagreement that <u>Apprendi</u> held <u>inter al-</u>
<u>ia</u>, that any fact which affects the statutory maximum sentence must
be both charged in the indictment, and then proven to a jury beyond
a reasonable doubt. The Court relied upon and grounded it's ruling
on the Fifth and Sixth Amendments. The Fifth Amendment's Due Process
Clause requires that every element in a criminal offense be proven
beyond a reasonable doubt, and the Sixth Amendment gives defendants
the right to have juries make that determination.

Since the <u>Apprendi</u> decision was based upon a ruling as to a
specific statute, the Supreme Court in their landmark decision did
not explicitly decide that the tops of the currently-calculated
Guideline ranges were also to be considered statutory maximums. Al-
though there certainly was persuasive argument to support that they

-5-

in fact were such, the Courts of Appeals which have considered this question each held that Apprendi did not specifically apply to the Federal Sentencing Guidelines, see, e.g., United States v. Kinter, 235 F.3d 192 (4th Cir. 2000); United States v. Caba, 241 F.3d 98 (1st Cir. 2001)(collecting cases).

However, the ong and well-established traditional principle set forth in Teague v. Lane, 489 U.S. 288 (1989), to the effect that a case announces a new rule if the "result was not dictated by precedent existing at the time the Defendant's conviction became final," was referring only to the precedents established by the Supreme Court. In this context, and using the rule announced earlier in Apprendi, the Booker Court held that the Sentencing Reform Act violated defendants Constitutional rights in two ways.  First, the Act violated their Sixth Amendment right because it required judges, and not juries, to decide facts which affected the maximum sentence to which the defendants were exposed.  Second, it violated their Fifth Amendment rights because it allowed Judges to find those facts by a mere preponderance of the evidence, rather than beyond a reasonable doubt, and it did not limit the sentence calculation to only those facts alleged and plead in the indictment.

Indeed, such a ruling was surely dictated by the decisions in Jones v. United States, 526 U.S. 227 (1999), Apprendi, supra, and in Blakely v. Washington, 542 U.S. 296 (2004).  In any event, it certainly cannot be considered a "new rule" for those Defendants whose convictions became final after Apprendi was decided on June 26, 2000. Justice Stevens (dissenting in the remedy portion of the Booker decision) opined that "prosecutors could avoid an Apprendi problem simply by alleging in the indictment the facts necessary to reach

-6-

the chosen Guidelines sentence."  Therefore, how could the Booker
Court hold that a mandatory application of the Federal Guidelines
(which violates a defendant's Constitutional right to a Jury trial
on any disputed factual subject which increases his/her maximum pun-
ishment) does not apply retroactively to criminal cases which became
final before it's release?  The answer to the question is that the
case did **not** establish a so-called "new rule", but merely applied
previously existing well-settled precedents -- including, but not
limited to, that of Apprendi.

Furthermore, although one might argue that the Booker decision
was more concerned with the identity of the decision maker, rather
than with the primary conduct that was unlawful, such an analysis is
premature and misplaced for the purposes of deciding whether this
case announced a new rule.  This basic reasoning is the fact that a
reviewing Court must first determine when a Defendant's conviction
became final, and then whether the decision in question was "dicta-
ted by precedent existing at the time the Defendant's conviction be-
came final.", see, Teague, supra.  The Apprendi decision was certainly
very concerned with the identity of the decision maker, and more im-
portantly, the standard of proof required in the making of the sub-
ject decision.

Therefore, it cannot be denied that Booker merely applied the
procedural rule announced in Apprendi to the Federal Guidelines, and
did not announce a new rule which was not dictated by prior precedent.
Even if the Booker Court could be considered to have announced a new
rule by applying Appreni's rule specifically to the Federal Guide-
lines (which in fact it did not), such a rule would be deemed sub-
stantive and not procedural in it's application and nature.  The

-7-

procedural aspect of this rule was pre-established in Apprendi, e.g., that any fact which increases the statutory maximum sentence must be charged in the indictment and proved to a Jury beyond a reasonable doubt. The application of the Apprendi rule to the Federal Guidelines (a statute) is a substantive change in the law, and such a decision by the Supreme Court, according to their precedents, must be applied retroactively to the Petitioner in this instant action.

In summary, the Petitioner's conviction was not final when the rule announced in Apprendi was decided; therefore that rule (specifically being applied by Booker to the Federal Sentencing Guidelines) must be recognized and applied in the instant action. The lower Courts may not re-evaluate such considerations under their own standards, as Griffith v. Kentucky, 479 U.S. 314, 328 (1987), Teague, and Yates (as shown before) have already established the proper standards on the lower Court's behalf. Indeed, in the case at bar, the Booker decision, as it relates to the Petitioner, is cognizable under §2255 because both Booker and "Blakely [are] basically an extension of the Apprendi rule." In re Dean, 375 F.3d 1287, 1289-90 (11th Cir. 2004).

First, in Blakely, supra, the Supreme Court rendered a decision which substantially impacted Sentencing Guideline schemes previously existing in many of the State Courts' judicial systems. The Blakely Court applied the Apprendi ruling to a certain State sentencing system that allowed a Judge to find a fact that increased the Defendant's sentence by 37-months beyond the prescribed maximum punishment. In a 5-to-4 decision, the majority held that the defendant in the State of Washington, who received a 90-month sentence rather than a 53-month sentence, was entitled to relief because of the sentencing

Court's enhancement for "deliberate cruelty".  This finding by the
Judge at sentencing relied upon facts which were not charged in the
indictment, not admitted by the Defendant, and were not found by a
jury beyond a reasonable doubt.

However, and not surprisingly after Blakely, the State prose-
cutors (as the Federal prosecutors did in Apprendi) attempted to
circumvent the applicability of Apprendi by arguing  that there was
no Apprendi violations because the appropriate statutory maximum
penalty was not 53-months, but rather a 10-year maximum for Class B
felonies found in violation of their State statute § 9A.20.021(1)(b).
As briefly mentioned above, this was precisly what the State and Fed-
eral prosecutors argued after Apprendi was decided in 2000,  i.e.,
that the maximum penalty for Apprendi purposes could only be deter-
mined on the face of the statute applicable to the conviction, and
the lower Courts had previously adopted their arguments in toto.

Nevertheless, the Blakely Court held that "our precedents make
clear, however, that the statutory maximum for Apprendi purposes is
the maximum sentence a Judge may impose solely on the basis of the
facts reflected in the jury verdict or admitted by the Defendant."
Also, the Supreme Court's Blakely and Booker rulings clarify and de-
fine what a defendant's rights are with respect to being sentenced
to the maximum penalty for Apprendi purposes.  This can only be re-
flected in the jury's verdict alone, even when such a maximum pen-
alty may be authorized by the Sentencing Guidelines -- as opposed
to merely the fact if the statute of conviction.  Indeed, before and
even after Blakely, if a Defendant were sentenced below the maximum
penalty set forth on the face of a statute of conviction, e.g., §
841(b)(1)(C)'s maximum penalty of 20-years, the lower Courts would

-9-

deny such a Defendant _Apprendi_ relief regardless of what punishment the jury's verdict actually reflected.

Mirroring the State's position in _Apprendi_, the First Circuit Court of Appeals, in _Caba_, supra, held that "_Apprendi_ simply does not apply to Guideline findings (including, _inter alia_, drug weight calculations) that increase the Defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum." _Id_. Thus, the _Caba_ Court's holding and analysis, albeit mistaken for example, not only circumvented all Defendants' right to be sentenced only on the facts reflected in the jury's verdict (even if their convictions were not final when _Apprendi_ was decided), but also created an impediment to those who wanted to explicitly raise the issue using _Apprendi_ for precedents in both the District Court and on direct appeal.

However, the _Blakely_ decision was rendered on June 24, 2004, and it put into question the wisdom and logic of _Caba_ type holdings. Although the principles announced in _Blakely_ implicitly overruled the untenable holdings of _Caba_ and other similarly argued decisions, nonetheless the holding in _Caba_, for example, remained the precedent in the First Circuit. This was primarily due to the argument that the _Blakely_ decision failed to state how that case directly affected the Federal Sentencing Guidelines, see, _Blakely_, supra. Fortunately for the Petitioner (and all the other similarly situated defendants for whom convictions were not final when _Apprendi_ was decided), the Supreme Court explicitly overruled _Caba_ et al. _in toto_, via it's substantive holding and clarification in _Booker_. Consequently, his legal impediment (_Caba_-like holdings) has now been removed for further consideration. The Petitioner's objections and position are

now substantiated by means of Booker's substantive holdings.

**B. Apprendi's Procedural Rule As Applied To The Guidelines Can Only Be Deemed To Create A Substantive Rule:**

The Petitioner will now discuss for this Court's consideration the fact that the Booker decision did not announce a "new rule" of criminal procedure, which otherwise could arguably not be given a retroactive application under such factual circumstances presented presented here.  The guiding principle of law used to determine whether a rule of criminal law is substantive, rather than procedural, is not always a bright one.  See, Robinson v. Neil, 409 U.S. 505, 509 (1973)("[W]e would not suggest that the distinction that we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other.").  Nevertheless, when a Court uses a procedural rule of law as a Constitutional gauge for the purposes of determining whether a statute offends the Constitution, such an interpretation (if it creates a new rule) is substantive in nature, "[B]ecause Teague, by its terms applies only to procedural rules, ... it is inapplicable to the situation in which this Court decides the meaning of a criminal statute."  Bousley v. United States, 532 U.S. 614 (1998).

The Booker Court applied Apprendi's procedural rule to the Guidelines, and (at best) created a substantive rule of law.  The Supreme Court has "consistently held that the Guidelines have the force and effect of laws." Booker, supra; see, e.g., Mistretta v. United States, 488 U.S. 361, 391 (1989); Stinson v. United States, 508 U.S. 36, 42 (1993).  The Booker case involved both the interpretation of the Sentencing Guideline (a criminal statute), and the procedural safeguards attendant to a defendant's right to have a jury

-11-

make all factual findings which may lead to the maximum permissible punishment. Although the latter half of this hybrid stems from the Apprendi decision, the first half strays from the Apprendi procedural rule in such a material way as to undermine any attempted analogy.

However, since both the Supreme Court and most U.S. Circuit Court of Appeals have decided cases which evince that Booker (if it could be said that it created a new rule) at best gave birth to a substantive rule of criminal law. See, e.g., Richardson v. United States, 526 U.S. 813 (1999); United States v. Irvin, 2 F.3d 72 (4th Cir. 1993).

In Richardson the core holding required Jury unanimity as to each violation in the series of violations needed to convict under the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848. See, Richardson, 526 U.S. at 818-19. Due to it's substantive nature, most Courts of Appeals have made Richardson retroactively applicable to cases pending on collateral review. See, e.g., Santana-Madera v. United States, 260 F.3dd 133, 138-39 (2nd Cir. 2001); United States v. Lopez, 248 F.3d 427, 432 (5th Cir. 2001); Murr v. United States, 200 F.3d 895, 906 (6th Cir. 2000). Moreover, in Irvin, supra, a unanimous panel held that a District Court must determine the quantity of narcotic reasonabley foreseeable to the Defendant before applying the mandatory minimum sentence provisions of 21 U.S.C. § 841. In other words, mandatory minimum sentences under §841 must be based upon the amount of drugs which were reasonably foreseeable to the individual co-conspirator being sentenced, rather than on the entire amount of drugs attributable to the conspiracy as a whole. This decision was also applied to Defendants on collateral review. See, Proctor v. United States, No. 92-72-N-06 (E.D.Va. Nov. 7, 1994).

In a similar manner the Supreme Court clarified in <u>Booker</u> that it's "holding in <u>Blakely</u> applies to the Federal Sentencing Guidelines.".  Furthermore, the <u>Booker</u> Court held that, "[O]ur precedents, we explained, make clear that the statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a Judge may impose solely on the basis of the facts reflected in the Jury verdict or admitted by the Defendant."  <u>Booker</u>, supra.  There is nothing new or procedural about this rule (if indeed you can call it a rule), because in essence this purported rule is merely defining and clarifying (through the lens of the Fifth and Sixth Amendments) what a statutory maximum penalty is under the Sentencing Guidelines (a statute).  Such an interpretation could never be construed as being procedural.  Although one must admit, that the phrasing does have a procedural ring to it, but every substantive ruling can be phrased to sould similarly procedural in nature.

For example, where a new decision announces that specific intent is an element of a statutory criminal offense, the issue could be phrased as to whether a Court must first determine that the Defendant had specific intent prior to it's determination of the applicability of the statute.  Although <u>Booker</u>'s rule may also be phrased as merely procedural, it's underlying essence and nature is clearly substantive.  In summary, <u>Booker</u> is clearly and plainly concerning and affecting the Constitutionality of the way and manner upon which a defendant may be lawfully sentenced -- being the ultimate heart and soul of substantive criminal law.

## C.  Teague's Exceptions:

The Petitioner will briefly review the principles of <u>Teague</u>.

-13-

Since, in arguendo, if the Court concludes that Booker announced a
new rule, and that that rule was merely a new rule of criminal pro-
cedure, the Booker decision would nonetheless squarely fit within
one of Teague's exceptions -- watershed rules.  The Supreme Court in
Booker reiterated it's holding in Apprendi, namely, that under the
Fifth and Sixth Amendments, any fact (other than a prior conviction)
which increases the maximum penalty for a crime must be charged in
the indictment and proven beyond a reasonable doubt by a jury's ver-
dict.  Apprendi, supra, 530 U.S. at 476.  Applying this rule to the
Federal Guidelines, the Booker Court did not establish a new Consti-
tutional rule of criminal procedural which broke new ground, nor im-
posed a new obligation on the Federal Government which had not been
"dictated by precedents existing at the time the Defendant's convic-
tions became final." Teague, supra, 489 U.S. at 301.  In Teague, the
Supreme Court re-evaluated the retroactive application of new Consti-
tutional rules of criminal procedure to collateral proceedings, and
held that a habeas corpus Petitioner must rely on the law in exis-
tence at the time his conviction became final, unless he could sat-
isfy one of two certain exceptions.

      Prior to embarking on a discussion of those two exceptions,
the Petitioner will first set out the basic facts applicable to his
discussion in that his conviction became "final" on
Booker, based upon the prior Apprendi rule, was decided on January
12, 2005.  However, the Booker Court opined, "We reaffirm our hold-
ing in Apprendi: Any fact (other than a prior conviction) which is
necessary to support a sentence exceeding the maximum authorized by
the facts established by a plea of guilty or a Jury verdict must be
admitted by the Defendant or proven to a Jury beyond a reasonable

-14-

doubt." Booker, supra.  Thus, the Booker Court only used the proce-
dural rule adumbrated in Jones, supra, and subsequently announced in
Apprendi as a Constitutionally-compelled rule of law.  The Petitioner's
conviction in this case sub judice became final on                    ,
and the Apprendi rule became an established cornerstone precedent on
June 26, 2000.  Booker, then, was "dictated by precedent existing at
the time the Defendant's conviction became final."  Teague, supra,
489 U.S. at 301.

Even in arguendo, if the Booker decision created a new rule
which was not dictated by precedent existing when the Petitioner's
conviction became final (although that is clearly not true), it's
substantive application of the Apprendi rule satisfies the second ex-
ception under Teague.  Accordingly, the Petitioner will now discuss
both exceptions:

> (1). A new rule should be applied retroactively if it places
> "certain kinds of primary, private, individual conduct beyond
> the power of the criminal law-making authority to proscribe;"
> (2). "Watershed rules of criminal procedure." Teague, supra,
> 489 U.S. at 307.

The first exception obviously has no application here, and no
further discussion is required on that point.  As for the second ex-
ception, it does apply to "watershed rules that not only improve the
accuracy [of criminal proceedings], but also alter our understanding
of bedrock procedural elements essential to the fairness of a pro-
ceeding."  Sawyer v. Smith, 497 U.S. 227, 242 (1990)(quoting Teague,
supra, 489 U.S. at 311).  Indeed, the Apprendi principle, as applied
by Booker to the Federal Guidelines, is in fact and unequivocally such
a watershed rule.  See, Kinter, supra, ("we agree with the conclusion

-15-

... that the relevant maximum under Apprendi is found on the face of the statute rather than the Sentencing Guidelines); Caba, supra. Additionally, the Kinter Court also held that, "if this analysis were correct, Apprendi would indeed work a watershed change upon Federal Court's sentencing practices." Id.  See also, United States v. Levy, 379 F.3d 1241 (11th Cir. 2004)("Ardlev and Levy are only an attempt to limit the impact of the Supreme Court's recent watershed sentencing decisions.").

Justice O'Connor, the author of Teague, characterized the majority opinion in Apprendi as one which announced "a watershed change in Constitutional law." Apprendi, supra, 530 U.S. at 524 (O"Connor J., dissenting).  Justice O'Connor's delineation of the Apprendi rule's attributes are more fully materialized in Booker by giving birth to an undeniable watershed sentencing decision of judicially historic significance.  Furthermore, the Supreme Court case of Schiro v. Summerlin, 542 U.S. 348 (2004), also provides compelling support that Booker passes through the second exception for retroactivity on timely filed initial habeas corpus cases.  Although the Supreme Court in Summerlin rejected the retroactivity of it's new procedural rule announced in Ring v. Arizona, 536 U.S. 584 (2002)(holding that a jury, nor a Judge, must make the findings necessary to impose the death penalty), it did so because the possibility of inaccuracy was minimal, in that both fact finders there were required to use the same "beyond a reasonable doubt" standard.

Before Booker, on the other hand, Judges determined sentencing enhancement facts by a mere preponderance of the evidence.  After Booker, those facts must now both be determined by a Jury and proven beyond a reasonable doubt.  Accordingly, before Booker, the fact-

-16-

finding process so "seriously diminishe[d]" accuracy as to produce an "impermissibly large risk of injustice." Summerlin, supra, 159 L.Ed. 2d at 451.  The Booker rule, which remedied that risk, is therefore exempt from Teague's retroactivity bar under the water-shed rule of criminal procedure exception.  See, e.g., Inre Winship, 397 U.S. 358 (1970); Cf. Ring, supra, as discussed in Summerlin, supra.  It is axiomatic that the core holding in Booker invalidated the Federal Guidelines, based upon the Sixth Amendment Jury Trial violations, as well as Apprendi's basic Due Process doctrine.  Jointly, those legal bases being of Constitutional proportions compel retroactivity.  See, Winship, supra, 397 U.S. at 363-64 (requiring juvenile charges to be proven by proof beyond a reasonable doubt, instead of by a preponderance of the evidence).  The Court's reasoning was that the reasonable doubt standard, "is a prime instrument for reducing the risk of conviction resting on factual error. The standard provides concrete substance for the presumption of innocence -- that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.").

Therefore, since the Supreme Court's decision in Apprendi, as clarified and reaffirmed in Booker, requires enhancement facts which increase a Defendant's maximum penalty to be proven by proof beyond a reasonabel doubt, instead of by a preponderance of the evidence, (reasoning that enhancement facts which increase a Defendant's prescribed punishment are the functional equivalent of the elements of the offense), retroactivity must be given to such a "bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." Winship, supra.  Furthermore, because Booker's "new rule" (if it can be considered a

-17-

new rule) of Constitutional law rests on both <u>Apprendi</u>'s Due Process doctrine, and <u>Winship</u>'s Sixth Amendment right to Jury trial with respect to the "beyond a reasonable doubt" standard, according to Supreme Court precedent, retroactivity to timely filed initial habeas corpus petitions must be given -- at a minimum.  Consequently, <u>Booker</u> requires that this Court enter an appropriate Order vacating the Petitioner's presently existing unconstitutional sentence.

In sum, the application of <u>Apprendi</u>'s so-called procedural rule pertaining to the Sentencing Guidelines in fact created a substantive rule of criminal law which not only must be applied retroactively due to it's substantive nature, but also because it satisfies the watershed rule exception under <u>Teague</u>.  Surely, the <u>Booker</u> decision now mandates, <u>inter alia</u>, that the District Court must have a finding of fact(s) from the Jury using the "beyond a reasonable doubt" standard to justify the enhancing of a defendant's sentence beyond the prescribed maximum penalty his is facing, even under the Sentencing Guidelines.

The change from the "preponderance of the evidence" standard to the "beyond a reasonable doubt" standard, unequivocally improves the accuracy and fairness of all criminal sentencing proceedings. It forever alters the Court's responsibilities of insuring the bedrock procedural elements -- sentencing under the Guidelines -- which is essential to the fundamental fairness of sentencing proceedings. See, <u>WInship</u>, supra ("the standard provides concrete substance for the presumption of innocence -- that bedrock axiomatic elementary principle whose enforcement lies at the foundation of the administration of our criminal law.".  Accordingly, <u>Booker</u> is clearly exempt from <u>Teague</u>'s non-retroactivity bar, and therefore it must be applied

-18-

to the case at bar.

## CONCLUSION

The applicability of <u>Apprendi</u> to petitioner challenges the propriety of the standards used to sentence him as well as violating his constitutional rights to dus process pursuant to the Fifth Amendment. The application of <u>Apprendi</u> and through <u>Apprendi</u>, <u>Booker</u>, requires the IN inclusion of myriad previously non included relevant factors which in the eyes of a rational trier of facts could only result in remand, redress and resentencing in accordance with the above.

# *Certificate of Service*

I, <u>Ladeslao Ocampo-Flores</u>, hereby certify that I have served a true and correct copy of the following, by placement in the inmate mail, **Pursuant to 28 USC § 1746:**

**Motion to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C §2255**

Service of process is deemed complete at the time of delivery to the prison authorities for forwarding to the Court. *Houston v. Lack* 101 L.Ed..2d. 245 (1988) confirms that by such service upon the parties to litigation and or his/her attorney of record, by placement in a sealed, postage prepaid envelope addressed to:

```
Office of the Prosecutor
Southern District of California
880 Front Street
San Diego, California    92101
```

and deposited in the United States Mail maintained by the USP Lompoc, Lompoc, California, all requirements of service of process required by law have been fulfilled this:

___25___ day of ___July___, 20_08___ .

United States Penitentiary
3901 Klein Boulevard
Lompoc, CA 93436

(Name) *Ladislao Ocampo Flores*

_____
Bureau of Prisons Identification Number

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

```
┌─────────────────────────────┐
│          FILED              │
│        AUG 11 2008          │
│  CLERK, U.S. DISTRICT COURT │
│ SOUTHERN DISTRICT OF CALIFORNIA │
│ BY      [signature]   DEPUTY │
└─────────────────────────────┘
```

**I (a) PLAINTIFFS**

**Ladeslao Ocampo-Flores**

**DEFENDANTS**

**United States of America**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Ladeslao Ocampo-Flores**
**3901 Klein Blvd**
**Lompoc, CA 93436**
**24524-208**

**ATTORNEYS (IF KNOWN)**

**U.S. Attorney**

**II. BASIS OF JURISDICTION (PLACE an X IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)        FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2255

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☒ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE

Docket Number

DATE        8/11/2008

SIGNATURE OF ATTORNEY OF RECORD

[signature]