UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07cr 3438.DMS

| | |
|---|---|
| **LADESLAO OCAMPO- FLORES** ) <br> Petitioner, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> **UNITED STATES OF AMERICA** ) <br> Respondent. ) <br> _____ ) | Case No. 07-CR-3177(LDW) <br><br> **NUNC PRO TUNC** <br> **AUG - 6 2008** |

FILED
AUG 1 2 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**PETITIONER'S MOTION PURSUANT TO RULE 15 (a) AND (c)
OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR LEAVE
TO SUPPLEMENT HIS ORIGINAL 28 U.S.C. § 2255 PETITION**

**COMES NOW** the petitioner and herein moves this honorable court for leave to supplement his original 28 U.S.C.§ 2255 petition with the enclosed memorandum of law being herewith filed in conformity with RUles 15 (a) and (c) of the Federal Rules of Civil Procedure. Petitioner also alerts court that the final issue of the instant motion will be sent within ten days of this enclosure.

Therefore, the petitioner sets forth and submits the enclosed memorandum in further support of his § 2255 petition.

Respectfully submitted,
Ladeslao Ocampo-Flores



**UNDER BOOKER, CERTAIN PROVISIONS OF SECTION 3553(f) SHOULD BE SEVERED FROM THE STATUTE, AND THEREFORE THE DISTRICT COURT ERRED IN DETERMINING THAT MR OCAMPO-FLORES ELIGIBLE FOR "SAFETY VALVE" RELIEF.**

A.  **Introduction And Standard Of Review**

   Section 3553(f) provides:

   in the case of an offense under [21 U.S.C. § 841], the court shall impose a sentence <u>pursuant to the guidelines promulgated by the United States Sentencing Commission under section 994 of Title 28</u> without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that-

   (1) <u>the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;</u>

   (2) the defendant did not use violence or credible threats or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

   (3) the offense did not result in death or serious injury to any person;

   (4) <u>the defendant was not an organizer, leader, manager, or a supervisor of others in the offense, as determined under the sentencing guidelines</u> and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

   (5) not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Section 3553(f) has come to be known as the "safety valve" provision, as it allows a court to pierce a mandatory minimum under the specified circumstances.

In the instant offense, while the government agreed that Mr. Flores was indeed elegible for the "safety valve" provision, the court demurred. Mr. Flores contends that the emphasized portions of section 3553(f), including section 3553(f)(1) and the portion of section 3553(f)(4) that cross-references the sentencing guidelines, should be severed from the statute in light of <u>Booker</u>, and therefore this Court should remand so that the district court can reconsider application of the safety valve provision. This Court conducts de novo review. See <u>United States v. Auld</u>, 321 F.3d 861, 863 (9th Cir. 2003) (conducting de novo review of interpretation of section 3553).

**B. The Emphasized Portions Should Be Severed**

In <u>United States v Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that section 3553(b)(1) rendered the sentencing guidelines unconstitutional and therefore needed to be severed from the statute. As a result, the sentencing guidelines are now only "advisory." The Second Circuit has held that the Supreme Court's rationale requires that other provisions in section 3553, which were not before the Court in <u>Booker</u>, must also be severed. See <u>United States v. Selioustsky</u>, 409 F.3d 114, 116-17 (2d Cir. 2005) (severing out section 3553(b)(2)).

With respect to section 3553(f), the Second Circuit has severed out the first emphasized portion of the statute, which requires imposition of a guideline sentence after a court has determined that a defendant is entitled to safety valve relief. See <u>United States v Castillo</u>, No. 05-3454, _F.3d_, 2006 WL 2374281 (2d Cir. Aug. 16, 2006). The Second Circuit, however, has not severed out

the other emphasized portions of section 3553(f) (specifically section 3553(f)(1), which rely on the sentencing guidelines. See United States v. Barrero, 425 F.3d 154, 156-58 (2d Cir. 2005). Other circuits have agreed with the Second Circuit. See, e.g., United States v. McKoy, 452 F.3d 234, 239-40 (3d Cir. 2006); United States v. Brehm, 442 F.3d 1291, 1300 (11th Cir. 2006); United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005).

Defendant contends that these other courts have erred in considering Booker's severability analysis. These courts have reasoned that there is no constitutional problem with section 3553(f)(1), and therefore it need not be severed. See, e.g., McCoy, 452 F.3d at 239-40. This reasoning misunderstands the severability analysis of Booker. In Booker, 543 U.S. at 259-60, the Supreme Court did not limit severability to those sentencing provisions that created a constitutional problem. Indeed, the Supreme Court severed provisions of 18 U.S.C. § 3742, not because they were unconstitutional but because they could not "function independently" and contained "critical cross-references" to the guidelines. Booker, 543 U.S. at 259-60. In other words, a proper severability analysis does not simply involve consideration of whether a provision is constitutional but also requires an inquiry into whether the provision can properly function as it was intended given the severance of other interlocking provisions.

In this case, sections 3553(f)(1) and (f)(4) contain critical cross-references to the sentencing guidelines that prevent proper, independent functioning. Moreover, when Congress enacted sections

3553(f)(1) and (f)(4), it undoubtedly did so with the understanding that the sentencing guidelines were mandatory, not advisory. Given that the sentencing guidelines are no longer mandatory, and given that sections 3553(f)(1) and (f)(4) contain "critical cross-references" to the guidelines, they cannot function properly as they were intended and therefore should be severed from the statute under <u>Booker</u>. Accordingly, this Court should remand to the district court so that it can reconsider application of the safety valve provision without section 3553(f)(1) and (f)(4).

## II. DEFENDANT OCAMPO-FLORES SENTENCE IS VIOLATIVE OF HIS FIFTH AMENDMENT RIGHTS AS THE DISTRICT COURT LACKED KNOWLEDGE OF AVAILABLE RANGE OF SENTENCING DISCRETION UNDER APPLICABLE LAW

Federal due process requires that the sentencing court be aware of all discretionary sentencing alternatives. <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980), The "Hicks Analysis" is not a novel approach, but one that is regularly utilized by Appellate Courts to vacate sentences where the sentencing court lacked knowledge of the available range of sentencing discretion -- most frequently due to a change in applicable law. The Hicks Analysis has been found to apply to violations of the rule(s) set forth in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); and to violations of the new constitutional rule(s) set forth in <u>United States v. Booker</u>, 543 U.S. 220 (2005), to which the defendant now briefly turns.

Previous to the <u>Booker</u>, supra, decision, Title 18 U.S.C. § 3553(b)(1)(Supp. 2004)[18 U.S.C.S. § 3553(b)(1)] provided;

> "Application of guidelines in imposing a sentence; --
> (1) In general, -- Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship on the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offender, and to the applicable policy statements of the Sentencing Commission."

As written prior to the Booker, supra, decision, the guidelines were mandatory and binding on all judges. While subsection (a) of § 3553 lists the sentencing guidelines as the factor to be considered in imposing a sentence; subsection (b) directs that the court "shall impose a sentence of the kind and within the range" established by the guidelines; and only rarely to depart in specific limited instances. Because they were binding on judges, the guidelines had th force and effect of law. Simply put, the Booker, supra, decision, a straightforward application of Apprendi, by way of the Blakely ruling, declared portions of the guidelines unconstitutional and in violation of the Sixth Amendment. To correct this error, the Supreme Court excised two specific statutory provisions -- the provision that requires sentencing courts to impose a sentence within the applicable guideline range; and the provision which sets forth standards of review on appeal.

Extending Blakely's and Booker's holding to administratively written sentencing rules creates a host of both statutory and non-statutory sentencing determinations including appellate court decisions delineating the limits of what is "reasonable" (i.e., what makes a particular sentence proportionate or disproportionate). Appellate court efforts to define the limits of "reasonable" fall within the scope of both Blakely and Booker decisions; and legislate an entire new area concerning a judge's decisions to identify a host of sentencing factors that permit the imposition of factors that might justify a lesser sentence.

In the case at bar, this Court chose, notwithstanding defendant's substantial assistance to establish culpability via the Guidelines, attributing to them a reasonableness that has been found to be

wanting and unconstitutional by our highest courts, and only then impose a most moderate downward departure based on his assistance to authorities. In doing so the court considered sentencing factors relevant only to increased punishment, or as an element of the crime relevant only to guilt, and only thereafter adjusting for defendant's 5K.1 agreement.

Thus, the Sentencing Court did not function under the newly created constitutional edicts reflected in <u>Blakely</u> and <u>Booker</u> to consider sentencing that might justify a lesser sentence or element of the crime that might decrease defendant's culpability. In the past, courts have been able to sidestep managing the "fairness" constraint by an uneven application of sentencing factors and element of the crime weighed heavily in favor of the government, as is <u>Booker</u> where the judge's ruling based upon a preponderance of the evidence was in the eyes of the Supreme Court the "tail which wags the dog of substantive offense."

The <u>Booker</u> decision, by way of <u>Blakely</u> and <u>Apprendi</u> was a watershed decision of historic significance and ordered liberty. As delineated above, there remains little doubt of both its applicability and retroactiveness to defendant. Defendant's character, history, and other possible mitigating factors shoud have been grouped with other indicators pursuant to § 3553(a) and those combinant factors viewed 'in toto' in light of the <u>Booker</u> decision and independent of the unconstitutionality and unreasonableness of a mandatory guideline analysis. Only then, after mitigating factors have been reviewed, should defendant's substantial assistance to authorities be further considered. The Sentencing Court's failure to consider alternative mitigating factors was facially unconstitu-

tional in light of recent decisions of <u>Booker</u> and <u>Blakely</u> as well as violative of his rights pursuant to the Fifth Amendment. An application of the '<u>Hicks Analysis</u>' to the defendant must result in remand and vacatur of sentence.

## UNDER BOOKER, CERTAIN PROVISIONS OF SECTION 3553(f) SHOULD BE SEVERED FROM THE STATUTE, AND THEREFORE THE DISTRICT COURT ERRED IN DETERMINING THAT MR OCAMPO-FLORES, ELIGIBLE FOR "SAFETY VALVE" RELIEF.

### A. Introduction And Standard Of Review

Section 3553(f) provides:

in the case of an offense under [21 U.S.C. § 841], the court shall impose a sentence <u>pursuant to the guidelines promulgated by the United States Sentencing Commission under section 994 of Title 28</u> without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that-

(1) <u>the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;</u>

(2) the defendant did not use violence or credible threats or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious injury to any person;

(4) <u>the defendant was not an organizer, leader, manager, or a supervisor of others in the offense, as determined under the sentencing guidelines</u> and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Section 3553(f) has come to be known as the "safety valve" provision, as it allows a court to pierce a mandatory minimum under the specified circumstances.

In the instant offense, while the government agreed that Mr. Flores was indeed elegible for the "safety valve" provision, the court demurred. Mr. Flores contends that the emphasized portions of section 3553(f), including section 3553(f)(1) and the portion of section 3553(f)(4) that cross-references the sentencing guidelines, should be severed from the statute in light of Booker, and therefore this Court should remand so that the district court can reconsider application of the safety valve provision. This Court conducts de novo review. See United States v. Auld, 321 F.3d 861, 863 (9th Cir. 2003) (conducting de novo review of interpretation of section 3553).

B.  **The Emphasized Portions Should Be Severed**

In United States v Booker, 543 U.S. 220 (2005), the Supreme Court held that section 3553(b)(1) rendered the sentencing guidelines unconstitutional and therefore needed to be severed from the statute. As a result, the sentencing guidelines are now only "advisory." The Second Circuit has held that the Supreme Court's rationale requires that other provisions in section 3553, which were not before the Court in Booker, must also be severed. See United States v. Selioustsky, 409 F.3d 114, 116-17 (2d Cir. 2005) (severing out section 3553(b)(2)).

With respect to section 3553(f), the Second Circuit has severed out the first emphasized portion of the statute, which requires imposition of a guideline sentence after a court has determined that a defendant is entitled to safety valve relief. See United States v Castillo, No. 05-3454, _F.3d_, 2006 WL 2374281 (2d Cir. Aug. 16, 2006). The Second Circuit, however, has not severed out

the other emphasized portions of section 3553(f) (specifically section 3553(f)(1), which rely on the sentencing guidelines. See United States v. Barrero, 425 F.3d 154, 156-58 (2d Cir. 2005). Other circuits have agreed with the Second Circuit. See, e.g., United States v. McKoy, 452 F.3d 234, 239-40 (3d Cir. 2006); United States v. Brehm, 442 F.3d 1291, 1300 (11th Cir. 2006); United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005).

Defendant contends that these other courts have erred in considering Booker's severability analysis. These courts have reasoned that there is no constitutional problem with section 3553(f)(1), and therefore it need not be severed. See, e.g., McCoy, 452 F.3d at 239-40. This reasoning misunderstands the severability analysis of Booker. In Booker, 543 U.S. at 259-60, the Supreme Court did not limit severability to those sentencing provisions that created a constitutional problem. Indeed, the Supreme Court severed provisions of 18 U.S.C. § 3742, not because they were unconstitutional but because they could not "function independently" and contained "critical cross-references" to the guidelines. Booker, 543 U.S. at 259-60. In other words, a proper severability analysis does not simply involve consideration of whether a provision is constitutional but also requires an inquiry into whether the provision can properly function as it was intended given the severance of other interlocking provisions.

In this case, sections 3553(f)(1) and (f)(4) contain critical cross-references to the sentencing guidelines that prevent proper, independent functioning. Moreover, when Congress enacted sections

3553(f)(1) and (f)(4), it undoubtedly did so with the understanding that the sentencing guidelines were mandatory, not advisory. Given that the sentencing guidelines are no longer mandatory, and given that sections 3553(f)(1) and (f)(4) contain "critical cross-references" to the guidelines, they cannot function properly as they were intended and therefore should be severed from the statute under <u>Booker</u>. Accordingly, this Court should remand to the district court so that it can reconsider application of the safety valve provision without section 3553(f)(1) and (f)(4).

## II. DEFENDANT OCAMPO-FLORES SENTENCE IS VIOLATIVE OF HIS FIFTH AMENDMENT RIGHTS AS THE DISTRICT COURT LACKED KNOWLEDGE OF AVAILABLE RANGE OF SENTENCING DISCRETION UNDER APPLICABLE LAW

Federal due process requires that the sentencing court be aware of all discretionary sentencing alternatives. Hicks v. Oklahoma, 447 U.S. 343 (1980), The "Hicks Analysis" is not a novel approach, but one that is regularly utilized by Appellate Courts to vacate sentences where the sentencing court lacked knowledge of the available range of sentencing discretion -- most frequently due to a change in applicable law. The Hicks Analysis has been found to apply to violations of the rule(s) set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000); and to violations of the new constitutional rule(s) set forth in United States v. Booker, 543 U.S. 220 (2005), to which the defendant now briefly turns.

Previous to the Booker, supra, decision, Title 18 U.S.C. § 3553(b)(1)(Supp. 2004)[18 U.S.C.S. § 3553(b)(1)] provided;

> "Application of guidelines in imposing a sentence; --
> (1) In general, -- Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship on the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offender, and to the applicable policy statements of the Sentencing Commission."

As written prior to the Booker, supra, decision, the guidelines were mandatory and binding on all judges. While subsection (a) of § 3553 lists the sentencing guidelines as the factor to be considered in imposing a sentence, subsection (b) directs that the court "shall impose a sentence of the kind and within the range" established by the guidelines; and only rarely to depart in specific limited instances. Because they were binding on judges, the guidelines had th force and effect of law. Simply put, the Booker, supra, decision, a straightforward application of Apprendi, by way of the Blakely ruling, declared portions of the guidelines unconstitutional and in violation of the Sixth Amendment. To correct this error, the Supreme Court excised two specific statutory provisions -- the provision that requires sentencing courts to impose a sentence within the applicable guideline range; and the provision which sets forth standards of review on appeal.

Extending Blakely's and Booker's holding to administratively written sentencing rules creates a host of both statutory and non-statutory sentencing determinations including appellate court decisions delineating the limits of what is "reasonable" (i.e., what makes a particular sentence proportionate or disproportionate). Appellate court efforts to define the limits of "reasonable" fall within the scope of both Blakely and Booker decisions; and legislate an entire new area concerning a judge's decisions to identify a host of sentencing factors that permit the imposition of factors that might justify a lesser sentence.

In the case at bar, this Court chose, notwithstanding defendant's substantial assistance to establish culpability via the Guidelines, attributing to them a reasonableness that has been found to be

wanting and unconstitutional by our highest courts, and only then impose a most moderate downward departure based on his assistance to authorities. In doing so the court considered sentencing factors relevant only to increased punishment, or as an element of the crime relevant only to guilt, and only thereafter adjusting for defendant's 5K.1 agreement.

Thus, the Sentencing Court did not function under the newly created constitutional edicts reflected in Blakely and Booker to consider sentencing that might justify a lesser sentence or element of the crime that might decrease defendant's culpability. In the past, courts have been able to sidestep managing the "fairness" constraint by an uneven application of sentencing factors and element of the crime weighed heavily in favor of the government, as is Booker where the judge's ruling based upon a preponderance of the evidence was in the eyes of the Supreme Court the "tail which wags the dog of substantive offense."

The Booker decision, by way of Blakely and Apprendi was a watershed decision of historic significance and ordered liberty. As delineated above, there remains little doubt of both its applicability and retroactiveness to defendant. Defendant's character, history, and other possible mitigating factors shoud have been grouped with other indicators pursuant to § 3553(a) and those combinant factors viewed 'in toto' in light of the Booker decision and independent of the unconstitutionality and unreasonableness of a mandatory guideline analysis. Only then, after mitigating factors have been reviewed, should defendant's substantial assistance to authorities be further considered. The Sentencing Court's failure to consider alternative mitigating factors was facially unconstitu-

tional in light of recent decisions of <u>Booker</u> and <u>Blakely</u> as well as violative of his rights pursuant to the Fifth Amendment. An application of the '<u>Hicks Analysis</u>' to the defendant must result in remand and vacatur of sentence.

# Certificate of Service

I, __Ladeslao Ocampo-Flores__, hereby certify that I have served a true and correct copy of the following, by placement in the inmate mail, **Pursuant to 28 USC § 1746:**
**Motion to Supplement adn Memorandum of law**

Service of process is deemed complete at the time of delivery to the prison authorities for forwarding to the Court. _Houston v. Lack_ 101 L.Ed..2d. 245 (1988) confirms that by such service upon the parties to litigation and or his/her attorney of record, by placement in a sealed, postage prepaid envelope addressed to:

```
United States District Court
Southern DIstrict of California
Office of the Prosecutor
880 Front Street
San DIego, California
```

and deposited in the United States Mail maintained by the USP Lompoc, Lompoc, California, all requirements of service of process required by law have been fulfilled this:

__4__ day of __August__, 20 __08__ .

United States Penitentiary
3901 Klein Boulevard                (Name) _[signature: Ladeslao Ocampo Flores]_
Lompoc, CA 93436

---
Bureau of Prisons Identification Number

## Certificate of Service