KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 233317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile:  (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Respondent
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADISLAO OCAMPO FLORES,<br><br>                    Petitioner,<br><br>       v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | Civil Case No. 08CV1465-DMS<br>[Related to Criminal Case 07CR3438-DMS]<br><br>**THE UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S PETITION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

   COMES NOW the respondent, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, in response and opposition to the Petitioner's motion to vacate, set aside, or correct his sentence pursuant to Title 28, United States Code, Section 2255 with attached exhibits 1 through 12.[1]  This response in opposition is based upon the accompanying memorandum of points and authorities, exhibits and the files and records in the underlying criminal case that Defendant challenges: <u>United States v. Ladeslao Ocampo Flores</u>, 07CR3438-DMS.

/ /

---

[1] Exhibits 1 through 12 are a true and correct copy of (1) Petitioner's Motion for Writ of Habeas Corpus; (2) Petitioner's Motion Under Rule 15; (3) Court's Order to Show Cause; (4) Superseding Information; (5) Plea Agreement; (6) Transcript of the Plea Colloquy Before the Magistrate Judge; (7) United States' Sentencing Summary Chart; (8) Defendant's Objections to the Presentence Report; (9) Defendant's Sentencing Memorandum; (10) United States' Sentencing Memorandum; (11) Transcript of Defendant's Sentencing Hearings before the District Court; and (12) Judgment in Criminal Case No. 07CR3438-DMS.

**I**

**PRELIMINARY STATEMENT**

The United States opposes Ladislao Ocampo Flores' ("Petitioner's") motions pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of twenty-four months in custody, to be followed by two years of supervised release, resulting from his conviction for violation of Title 18, United States Code, Section 1544. [See Ex. 1, Petitioner's Motion for Writ of Habeas Corpus; Ex. 2, Petitioner's Motion under Rule 15.] On August 14, 2008, the Court issued an order to show cause setting forth the briefing schedule. [See Ex. 3, Order to Show Cause (Aug. 14, 2008).]

Notwithstanding that Petitioner waived his right to appeal or collaterally attack his sentence and conviction, he has filed the instant motions contending that he was sentenced beyond the maximum penalty in violation of the rule announced in Apprendi and clarified in Booker. In addition, Petitioner claims the District Court erred in determining that Petitioner was ineligible for "safety valve" relief under 18 U.S.C. § 3553(f). Petitioner's motions should be denied with prejudice for all of the following reasons: (1) Petitioner waived his right to appeal or collaterally attack his conviction or sentence; (2) Petitioner cannot collaterally attack his sentence because he could have raised his argument on direct appeal but elected to bargain away his appellate rights through a plea agreement; (3) Petitioner incorrectly asserts that he was sentenced beyond the maximum penalty; and (4) Petitioner's claim of severability with respect to the "safety valve" provision of 18 U.S.C. § 3553(f) has been overruled by Ninth Circuit precedent. As such, the Court should deny the petitions with prejudice.

**II**

**STATEMENT OF THE CASE**

**A.    PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT**

   **1.    Plea Agreement**

On December 26, 2007, Petitioner waived Indictment and agreed to allow the United States to file an Information charging Petitioner with one count of misuse of a United States passport in violation of 18 U.S.C. § 1544. On January 15, 2008, the parties corrected the date alleged in the Information and filed a Superseding Information charging Petitioner with one count of misuse of a United States passport in violation of 18 U.S.C. § 1544. [See Ex. 4, Superseding Information.]

1    On January 15, 2008, Petitioner and Respondent entered into a plea agreement. [See Ex. 5, Plea Agreement.] Petitioner admitted as "true and undisputed" that he applied for admission to the United States at the San Ysidro Port of Entry on or about November 25, 2007 by misusing a United States passport in the name of another person, namely, Carlos Proa Rivera. [See Ex. 5., ¶ II.B.] The plea agreement provided that the crime to which Petitioner had pled guilty carried a maximum sentence of ten years in prison. [See Ex. 5, ¶ III.A.] Petitioner affirmed in the Plea Agreement that he had read the agreement, discussed its terms with defense counsel, "and fully [understood] its meaning and effect." [See Ex. 5, ¶ XV; see also id., ¶ VI (representing that Petitioner "has a clear understanding of the charges and the consequences of this plea").] The plea agreement bears Petitioner's initials on each page and his signature on the last page. [See Ex. 5. at 1-12.]

Most importantly, in the Plea Agreement, Petitioner "waive[d], to the full extent of the law, any right to appeal or collaterally attack the conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence greater than the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing or the statutory mandatory minimum term, if applicable." [See Ex. 5, ¶ XI.]

### 2. Guilty Plea Before the Magistrate Judge

On January 15, 2008, Petitioner pled guilty before the Honorable Anthony J. Battaglia pursuant to a Plea Agreement and pursuant to Rule 11 of the Federal Rules of Criminal Procedure. [See Ex. 6, Transcript of Plea Colloquy before the Magistrate Judge.] At the hearing, Petitioner affirmed that he had signed the Plea Agreement and had initialed every page. [See Ex. 6, at 8-9.] Petitioner also specifically affirmed that his counsel had discussed the Sentencing Guidelines with him and how those Guidelines may apply to his case. [Id. at 7-9.] In addition, the Court ensured that Petitioner understood the terms "waiver" and "collateral attack," and Petitioner affirmed that he understood the meaning of these terms. [Id. at 9-10.] The Court acknowledged that Petitioner's counsel reviewed the section of the plea agreement concerning waiver of appeal and collateral attack with Petitioner prior to his guilty plea. [Id.]

Petitioner further confirmed that he discussed the plea agreement thoroughly with his attorney and did not have any questions about the agreement. [Id. at 9.] Petitioner's attorney, John Fielding,

affirmed that he had reviewed the Plea Agreement with Petitioner, and stated his belief that Petitioner understood the Agreement. [Id. at 10.] Finally, Mr. Fielding affirmed that Petitioner's plea was made voluntarily and with his concurrence. [Id. at 13.]

Based upon the Plea Agreement and the disposition hearing, the Court issued its findings and recommendations that Petitioner's guilty plea was made knowingly and voluntarily, that there was a factual basis to support the pleas meeting the elements of the crime, and therefore, Judge Battaglia would recommend that the guilty plea be accepted by Judge Sabraw. [Id at 13-14.]

### 3. Sentencing Documents

On March 5, 2008, the United States filed its Sentencing Summary Chart. [See Ex. 7, United States' Sentencing Summary Chart.] The United States recommended a base offense level of 8, an upward adjustment of 2 levels for Petitioner's prior deportation, an upward adjustment of 4 levels for Petitioner's fraudulent use of a United States passport, and a downward adjustment of 2 levels for acceptance of responsibility; resulting in a total offense level of 12. [Id.] With a Criminal History Category VI, the United States recommended that Petitioner be sentenced to the low end of the advisory guideline range of 30 months' imprisonment. [Id.]

On March 21, 2008, the Probation Officer filed an Addendum to the Presentence Report ("A-PSR"), correcting the calculations in the guideline range and updating the information in its Sentencing Summary Chart. [A-PSR at 1-6.]

On April 7, 2008, Petitioner filed his objections to the presentence report. [See Ex. 8, Defendant's Objections to the Presentence Report.] Petitioner objected to the computation of Petitioner's criminal history calculation and scoring. [Id.]

On June 2, 2008, Petitioner filed a sentencing memorandum. [See Ex. 9, Defendant's Sentencing Memorandum.] In his memorandum, Petitioner advised the Court that despite the fact that the plea agreement does not allow him to request any additional adjustments or departures, the parties agreed that Petitioner could ask for a sentence of no less than 24 months' imprisonment based on the fact that Petitioner was attempting to enter the United States in order to attend his daughter's funeral. [Id.]

On June 2, 2008, the United States filed a sentencing memorandum. [See Ex. 10, United States' Sentencing Memorandum.] In its memorandum, the United States performed a detailed analysis of the

1 advisory guidelines. [Id. at 3-4.]  In addition, the United States responded to Petitioner's objections to
2 the Presentence Report, and noted that it concurred with the Probation Officer's calculations of
3 Petitioner's criminal history based upon the judicially noticeable documents. [Id. at 5.]

4              **4**. **Sentencing Hearings**

5    On May 9, 2008, the District Court held a sentencing hearing. [See Ex. 11, Transcript of
6 Sentencing Hearings before the District Court.] During the hearing, the Court accepted Petitioner's plea
7 before the magistrate judge. [Id. at 3-4.]  The Court ordered the Probation Department to turn over the
8 supporting documentation concerning Petitioner's criminal history. [Id. at 6.]   Finally, and most
9 importantly, the United States advised the Court that it was aware that Petitioner had filed a habeas
10 motion under 18 U.S.C. § 2255, and the United States reminded Petitioner that he had waived his right
11 to appeal or collaterally attack his sentence and conviction.  [Id. at 6-7 ("The Government would just
12 like to caution the [Petitioner] about [filing a motion under § 2255]).]

13    On June 6, 2008, the District Court held another sentencing hearing. [See Ex. 11, Transcript of
14 Sentencing Hearings before the District Court.] During the hearing, the Court discussed the facts and
15 circumstances of the case and analyzed the factors set forth in 18 U.S.C. § 3553. [Id. at 12-14.]  After
16 considering all the factors, the Court sentenced Petitioner to 24 months in custody, followed by 2 years
17 of supervised release. [Id. at 13-14; see also Ex. 12, Judgment in Criminal Case.]   After sentencing
18 Petitioner, the Court confirmed with Petitioner and his counsel that Petitioner had waived and given up
19 his right to appeal or collaterally attack his plea, his conviction, and his sentence. [See Ex. 11, at 14-15.]
20 Petitioner affirmatively acknowledged that he waived his right to appeal and collateral attack. [Id. at 15.]

21         **B.**    **POST-CONVICTION PROCEEDINGS BEFORE THE DISTRICT COURT**

22    On August 11, 2008, Petitioner filed his motion for a writ of habeas corpus pursuant to 28 U.S.C.
23 § 2255. [See Ex. 1, Petitioner's Motion for Writ of Habeas Corpus.]   On August 12, 2008, Petitioner
24 filed another motion for a writ of habeas corpus. [See Ex. 2, Petitioner's Motion under Rule 15.]  On
25 August 14, 2008, the Court issued an order setting the schedule for responses related to Petitioner's
26 motion. [See Ex. 3, Court's Order to Show Cause.] On September 10, 2008, the United States filed the
27 following response in opposition to Petitioner's motions.
28 / /

# III

# STATEMENT OF FACTS

### A. OFFENSE CONDUCT

On November 25, 2007, at approximately 4:34 p.m., Petitioner attempted to enter the United States from Mexico through the pedestrian lanes at the San Ysidro Port of Entry. [PSR 1.] Petitioner presented a United States passport in the name of "Carlos Proa Rivera" with a photograph that beared a likeness to Petitioner. [Id.] The Customs and Border Protection officer noted discrepancies in the security features of the passport relative to the attached photograph, and confronted Petitioner. [Id.] Petitioner admitted that the passport did not belong to him and he was escorted to secondary inspection area for further screening. [Id.]

At the secondary inspection area, Petitioner admitted his true identity and that his correct name was "Ladislao Ocampo Flores." [Id.] Petitioner admitted that he was a citizen and national of Mexico with any documents that would allow him to enter or remain in the United States. [Id.] Petitioner was arrested and taken to a holding cell. [Id.]

At approximately 11:45 p.m., Petitioner was advised of his Miranda rights. [Id.] He acknowledged that he understood his rights and agreed to speak with the government agents without the presence of an attorney. [Id.]

### B. PETITIONER'S IMMIGRATION HISTORY

A records check confirmed that Petitioner is a citizen and national of Mexico. [Id.] Petitioner was born in Zacatecas, Mexico, in 1964. [Id. (see cover page of PSR).] Petitioner's legal permanent resident status was terminated on March 19, 1985. [Id. at 9.] Petitioner was subsequently deported to Mexico on March 12, April 23, October 29, and November 9, 2007. [Id.]

//
//
//
//
//
//

### C. **PETITIONER'S CRIMINAL HISTORY**

The United States contends that Petitioner has at least twenty-five criminal history points placing him in Criminal History Category VI. The following is a summary of Petitioner's criminal history [see PSR 2-7]:

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
| --- | --- | --- | --- |
| 07/18/1997 | Illinois State Ct Lake County | Passing bad checks (Felony) | 12 months' jail, 2 yrs probation |
| | | 07/25/06 – Probation revoked | 3 years' prison |
| 01/06/2000 | Wisconsin State Ct Racine County | Theft-Movable Property < $1,000 (Misdemeanor) | Fine and restitution |
| 05/30/2000 | Wisconsin State Ct Racine County | Theft-False Representation (Misdemeanor) | 90 days' jail, 9 month's jail (ss), 3 yrs probation |
| 05/30/2000 | Wisconsin State Ct Racine County | Issue of Worthless Checks (Misd.) | 90 days' jail |
| | | Bail Jumping (Misdemeanor) | 60 days' jail |
| 09/05/2003 | Illinois State Ct Cook County | Theft/Deception (Felony) | 12 months' jail, 30 months' probation |
| | | 07/25/2006 – Probation revoked | 3 years' prison |
| 09/05/2003 | Illinois State Ct Cook County | Theft/Deception (Felony) | 12 months' jail, 30 months' probation |
| | | 07/25/2006 – Probation revoked | 3 years' prison |
| 09/05/2003 | Illinois State Ct Cook County | Theft/Deception (Felony) | 12 months' jail, 30 months' probation |
| | | 07/25/2006 – Probation revoked | 3 years' prison |
| 11/17/2003 | Wisconsin State Ct Kenosha County | Knowingly Making False Statement in Title (Felony) | 6 months' jail |
| 03/21/2007 | USDC – Arizona | 8 U.S.C. § 1325 – Illegal Entry | 35 days' custody |
| 05/09/2007 | USDC – Arizona | 8 U.S.C. § 1325 – Illegal Entry | 180 days' custody |

In addition to the criminal history above, Petitioner has had at least nine other law enforcement contacts, most of which involved bad checks, theft, and deception. [PSR 7-8.] Petitioner also has two active warrants – one involving theft and the other involving bail jumping. [PSR 9.]

# IV

# ARGUMENT

**A.  WAIVER**

**1.  Petitioner Waived His Right To Collaterally Attack His Sentence**

Petitioner waived his right to collaterally attack the sentence as part of his Plea Agreement. The Ninth Circuit Court of Appeals has upheld the validity of waivers of appeal and has determined that "public policy strongly supports plea agreements, such as the one made by [defendant]." United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990).  Negotiating such waivers is a proper and sensible part of the plea bargaining process and helps ensure the important benefit of finality. See Navarro-Botello, 912 F.2d at 322.  Courts will generally enforce a defendant's waiver of his right to appeal if (1) the waiver is knowingly and voluntarily made, and (2) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal. See United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000). Applying these principles to the instant case, it is clear that Petitioner has waived his right to challenge this conviction and sentence.

**2.  The Waiver Here Was Knowing And Voluntary**

An express waiver of the right to appeal in a negotiated plea agreement is valid if knowingly and voluntarily made. See United States v. DeSantiago-Martinez, 38 F.3d 394, 395 (9th Cir. 1992).  A reviewing court looks to the circumstances that surround the signing and entry of the plea agreement to determine whether a defendant agreed to its terms knowingly and voluntarily. See United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996).  It is also relevant to determine whether the district court informed the defendant of his appellate rights and verified his intent to forfeit them. See United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000).

As discussed above, Petitioner entered into a written Plea Agreement with the advice and consent of his attorney. [See Ex. 5.]  In that Plea Agreement, Petitioner represented that the plea was knowing and voluntary [see Ex. 5, ¶ VI], that he fully understood the agreement [see Ex. 5, ¶ XV], and that he was satisfied with the representation of his attorney [see Ex. 5, ¶ XVI].

The Plea Agreement specifically provides for a waiver of collateral attack of Petitioner's conviction and sentence unless this Court imposed a sentence in excess of the high end of the guideline

range based on the offense level recommended by the Government in the Plea Agreement. [See Ex. 5, ¶ XI.] However, Petitioner now breaches this agreement by filing these petitions. "Compliance with [the plea agreement's] terms is expected of both the defendant and the government." United States v. Castro-Cervantes, 927 F.2d 1079, 1082 (9th Cir. 1990). As such, this Court should enforce Petitioner's knowing and voluntary waiver and dismiss his petitions with prejudice.

### 3.     **The Language Of The Plea Agreement Supports Finding A Waiver**

A plea agreement is contractual in nature and is measured by contractual standards. See United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000). This Court should look to what the parties reasonably understood the terms of the agreement were in deciding whether Petitioner waived his right to bring this petition. See United States v. Torres, 999 F.2d 376, 378 (9th Cir. 1991). Contract principles are applied to determine whether the agreement, by its terms, waives the right to collateral attack or appeal. See Nunez, 223 F.3d at 958. In applying those principles, "the terms of the agreement, if disputed, are to be determined by objective standards." United States v. Gerace, 997 F.2d 1293, 1294 (9th Cir. 1993) (citations omitted). The terms of the plea agreement can be objectively determined by reference to the plain language of the plea agreement. See United States v. Goroza, 941 F.2d 905, 909-10 (9th Cir. 1991). The plain language of the plea agreement will generally be enforced if the agreement is clear and unambiguous on its face. United States v. Jeronimo, 298 F.3d 1149, 1153 (9th Cir. 2005).

In this case, based on the clear language of the Plea Agreement cited above, the United States and Petitioner both contemplated that Petitioner would not file any collateral attacks on his conviction and sentence if the Court imposed a sentence less than the high end of the guideline range for Offense Level 12, which carried a range of 30-37 months with a Criminal History Category of VI. [A-PSR 6.] Any contrary assertion would render the waiver meaningless. See United States v. Schuman, 127 F.3d 815, 817 (9th Cir. 1997) (rejecting argument that waiver did not extend to appeals of incorrect sentencing guidelines application for it would render waiver meaningless).

Here, this Court sentenced Petitioner to 24 months in custody, to be followed by 2 years of supervised release. [See Ex. 12, Judgment in Criminal Case.] It cannot be disputed that the "bargained-for quid pro quo" of the written agreement, as understood by the parties, would be Petitioner's unassailed sentence and conviction because of the judgment rendered by this Court. See United States

1 v. Escamilla, 975 F.2d 568, 571 (9th Cir. 1992).  Moreover, a waiver of appeal cannot be circumvented
2 by filing a section 2255 motion.  See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1992).  In
3 Abarca, the defendant asked the district court to reduce his sentence due to newly discovered, partially
4 exculpatory evidence.  The Ninth Circuit affirmed the district court's finding, reiterating the holding in
5 United States v. Navarro-Botello, 912 F.2d 318 (9th Cir. 1990), that a knowing and voluntary wavier
6 of a right to appeal is valid.  Such a waiver applies to 28 U.S.C. § 2255 proceedings.  See Abarca, 985
7 F.2d at 1014.

### 4. **Finding Waiver, the Court Lacks Jurisdiction To Consider the Attack**

9 Assuming the Court finds Petitioner waived his right to appeal and collaterally attack his
10 conviction and sentence, then the Court lacks jurisdiction to consider any collateral challenge because
11 Petitioner's motions raise no challenge to the validity of his waiver.  See Washington v. Lampert, 422
12 F.3d 864, 869-70 (9th Cir. 2005) (recognizing that if sentencing agreement's waiver of the right to file
13 a federal habeas petition was valid, district court lacked jurisdiction to hear the case).

14 In sum, Petitioner validly waived his right to collaterally attack the conviction and sentence
15 voluntarily and knowingly.  Accordingly, his petitions should be dismissed with prejudice.

### B. **PETITIONER CANNOT FIND RELIEF IN BOOKER**

#### 1. **Petitioner Was Not Sentenced Beyond the Maximum Penalty, And Therefore Booker Provides Him With No Relief**

19 Petitioner's argument that he was sentenced beyond the maximum penalty in violation of the rule
20 announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), and defined and clarified in United States
21 v. Booker, 543 U.S. 220 (2005), lacks merit.  [See Ex. 1, Petitioner's Motion for Writ of Habeas Corpus
22 at 3-6.]  First, Petitioner was advised during his plea colloquy, as provided in his written plea agreement,
23 of the maximum penalties for pleading guilty to misuse of a United States passport – a maximum of ten
24 years in prison.  [See Ex. 5, Plea Agreement ¶ III.A; see Ex. 6, Transcript of Plea Colloquy at 5.]
25 Second, the Court, after considering the advisory guidelines and all of the factors set forth in 18 U.S.C.
26 § 3553(a), sentenced Petitioner to 24 months in prison, which is eight years less than the maximum term
27 of imprisonment.  [See Ex. 11, Transcript of Sentencing Hearings at 13; see Ex. 12, Judgment in
28 Criminal Case.]

1  As such, Petitioner's sentence did not exceed the maximum penalty, and therefore, there is no issue with respect to either Apprendi or Booker.

### 2.   **Booker Is Not Retroactive**

Petitioner's argument is that hisسentence must be vacated because of Booker, which held that the federal sentencing guidelines must be advisory, as the Guidelines are unconstitutional if mandatory. [See Ex. 1, Petitioner's Motion for Writ of Habeas Corpus at 6-21.] The success of Petitioner's position depends on the argument that Booker applies retroactively. The argument fails for one simple reason – the Court applied the holding in Booker and sentenced Petitioner after calculating the advisory guidelines and considering all of the factors set forth in 18 U.S.C. § 3553(a). Petitioner was sentenced in a post-Booker regime. As such, Petitioner's argument is meritless. Nevertheless, the United States provides the following analysis, assuming arguendo, that Petitioner's claim had merit.

Three circuits have thus far considered Booker's retroactive application on collateral review. For the reasons set forth below, all three of these circuits have found that Booker is not retroactive. These decisions are: Humphress v. United States, 398 F.3d 855 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005); and Varela v. United States, 400 F.3d 864 (11th Cir. 2005).

The appropriate analysis in determining whether a "new" rule of constitutional law is to be applied retroactively was set forth in Teague v. Lane, 489 U.S. 288 (1989). Under retroactivity analysis, "new" rules of law apply to all criminal cases still pending on direct appeal, but apply to convictions that are already final in only limited circumstances. Schriro v. Summerlin, 124 S. Ct. 2519, 2522 (2004). To determine if a new rule of law applies to cases on collateral review, one must first determine if the rule is substantive or procedural. New substantive rules apply retroactively, but new procedural rules generally do not. Id. A rule is substantive if "it alters the range of conduct or the class of persons that the law punishes." Id. at 2523. On the other hand, "rules that regulate only the manner of determining the defendant's culpability are procedural." Id. (emphasis in original.) The rule in Booker was procedural, in that it addressed the manner of sentencing, not the "range of conduct or the class of persons the law punishes."

The Supreme Court case of Schriro v. Summerlin, 124 S. Ct. 2519, 2522 (2004) is essentially dispositive on the point that Booker is a procedural, not a substantive, rule of law which is not to be

1  applied retroactively. Summerlin did not deal with Booker, but it dealt with another case flowing from
2  Apprendi v. New Jersey, 530 U.S. 466 (2000) – Ring v. Arizona, 536 U.S. 584 (2002). Ring held that
3  because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi
4  required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's
5  conviction and death sentence, which was imposed under the same Arizona law that was at issue in
6  Ring, became final before Ring was decided. The Supreme Court held that "Ring announced a new
7  procedural rule that does not apply retroactively to cases already final on direct review." Id. at 2526.
8  The Supreme Court stated, "Rules that allocate decision making in this fashion [requiring the jury rather
9  than the judge to find essential facts bearing on punishment] are prototypical procedural rules." Id. at
10 2523. Booker, as much as Ring, gave us a new rule allocating sentencing decision-making, thus, it gave
11 us a "prototypical" procedural rule. This was the conclusion reached by the Seventh Circuit , the Sixth
12 Circuit and the Eleventh Circuit. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)
13 ("Booker, like Apprendi and Ring, must be treated as a procedural decision for purposes of retroactivity
14 analysis."); Humphress v. United States, 398 F.3d 855, 860 n.1 (6th Cir. 2005) ("Without question, this
15 rule [in Booker] is a procedural one."); Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005)
16 ("Similar to the constitutional rule announced in Ring, the constitutional rule announced in Booker is
17 a 'prototypical procedural rule[].'")

18     Because the Booker rule is a procedural one, it is not applied retroactively to cases on collateral
19 review, unless it falls into one of the two Teague exceptions. The Booker rule is a "new" rule under the
20 test set forth in Teague: where its "result was not dictated by precedent existing at the time defendant's
21 conviction became final." Teague, 489 U.S. at 301. A rule is new when the unlawfulness of petitioner's
22 conviction was not "apparent to all reasonable jurists." Beard v. Banks, 124 S. Ct. 2504, 2511 (2004).
23 No appellate court which has addressed this issue so far has had any difficulty concluding that Booker
24 established a new rule of law. See, e.g., Humphress, 398 F.3d at 861. The Court in Humphress points
25 out that the Booker opinion itself explicitly finds that the holding applies to all cases on direct review.
26 Booker, 125 S. Ct. at 769. As the Court in Humphress observed, "[T]his discussion [of new rules
27 applying to cases on direct appeal] would be wholly unnecessary had the rule been dictated by
28 precedent." Humphress, 398 F.3d at 861.

Finally, the Booker holding does not fall under the Teague exception for "watershed" holdings.[2/] This exception is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceedings." Beard at 2513. Again, the holding in Schriro, for all intents and purposes, controls. In Schriro, the Supreme Court held that the Ring decision, holding that death penalty factors were to be determined by the jury and not by the judge, was not a watershed ruling. The Schriro Court noted, "[I]f . . . a trial held entirely without a jury was not impermissibly accurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." Schriro, 124 S.Ct. at 2526. Likewise, each of the three circuits that has considered the retroactive application of Booker has found that the Booker holding does not fall into the Teague watershed ruling exception. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005); Varela v. United States, 400 F.3d 864, 867-68 (11th Cir. 2005).[3/]

Booker does not apply retroactively to collateral review, and cannot provide Petitioner with the relief he seeks. As such, the Court should deny the petitions with prejudice.

### 3. Petitioner Cannot Raise this Argument on Collateral Review Because of Procedural Default

Petitioner did not raise this argument at trial or on direct appeal. Therefore, to obtain relief from this procedural default, he must show both "cause" for his failure to raise the issue at trial and on direct appeal, and "actual prejudice" resulting from the Booker error. See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152 (1982). He has shown neither.

Petitioner may seek to show "cause," by arguing that prior to Blakely, every court of appeals had rejected challenges to the Sentencing Guidelines under Apprendi. However, "the futility of presenting

---

[2/] The other Teague exception, which is a very rare exception not applicable here, is that nonretroactivity does not apply to "rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" Beard, 124 S. Ct. at 2513 (quoting Penry v. Lynaugh, 492 U.S. 302, 330 (1989)).

[3/] For what it is worth, none of the appellate courts that considered the retroactivity of Apprendi found that ruling to fall within the Teague watershed exception: See, e.g., Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); Coleman v. United States, 329 F.3d 77 (2d Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir. 2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002); Goode v. United States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001).

an objection . . . cannot alone constitute cause for a failure to object at trial." Engle v. Isaac, 456 U.S. 107, 130 (1982); see Bousley v. United States, 523 U.S. 614, 623 (1998).

Not only can Petitioner not show "cause," he cannot show "actual prejudice," i.e., that the error "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170. This is a demanding standard; it requires the defendant to carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain-error standard. Id. at 167. Petitioner cannot satisfy that standard because he cannot show that the error "affect[ed] substantial rights" in that he cannot establish that he would have received a different sentence if the Guidelines had been advisory, rather than mandatory. See United States v. Dominguez-Benitez, 124 S. Ct. 2333, 2339 (2004) (error that "affects substantial rights" under Rule 52 means "error with a prejudicial effect on the outcome of a judicial proceeding").

### C.    SECTION 3553(f) REMAINS INTACT AFTER BOOKER

Petitioner's argument that the Court erred when determining Petitioner's eligibility for "safety valve" relief under 18 U.S.C. § 3553(f) because portions of the statute should be severed lacks merit and has been foreclosed by prior Ninth Circuit precedent. [See Ex. 2, Petitioner's Motion under Rule 15.] First, and foremost, Petitioner was not facing nor did he received a mandatory minimum sentence for which "safety valve" would have granted him relief from such a sentence. Second, the Ninth Circuit recently joined its sister circuits in holding that Booker left intact the requirement of § 3553(f)(1). See United States v. Hernandez-Castro, 473 F.3d 1004, 1005 (9th Cir. 2007). The Ninth Circuit concluded that § 3553(f)(1) was not "rendered advisory by Booker." Id. at 1005-06. Moreover, the Ninth Circuit held that despite its mandatory language, 18 U.S.C. § 3553(f) survives Booker, and if triggered requires district courts to impose sentences according to the advisory Sentencing Guidelines. See United States v. Hernandez, 476 F.3d 791, 802-03 (9th Cir. 2007); United States v. Cardenas-Juarez, 469 F.3d 1331, 1334-35 (9th Cir. 2006); United States v. Cantrell, 433 F.3d 1269, 1278 (9th Cir. 2006). As such, § 3553(f) is not severable after Booker, and is therefore, inapplicable to Petitioner's sentence for a violation of 18 U.S.C. § 1544, which does not carry a mandatory minimum sentence. Thus, the Court should deny this petition with prejudice.

/ /

**D.     NO HEARING IS NECESSARY**

A district court may not deny a section 2255 petition without a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. To warrant an evidentiary hearing, a petitioner must "make specific factual allegations which, if true, would entitle him to relief." Baumann v. United States, 692 F.2d 565, 571 (9th Cir. 1982); see also United States v. Keller, 902 F.2d 1391, 1395 (9th Cir. 1990).

When case records are sufficiently developed to conclusively show that a petitioner is not entitled to relief, the district court may dismiss the claim without a hearing. See Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989). Here, Petitioner's claim does not merit an evidentiary hearing because the petition rests on legal arguments. No factual record need be developed, and the Court is aware of the cases cited by Petitioner. Accordingly, the Court should deny the petitions without a hearing.

**V**

**CONCLUSION**

Because Petitioner has expressly waived any right to collaterally attack his conviction and sentence, and because his claims of error are foreclosed by binding Ninth Circuit precedent, these petitions should be dismissed with prejudice.

DATED: September 10, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney